# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

DEBRA JEAN DAVIS,

    Plaintiff,

vs.

NANCY A. BERRYHILL,[1]
Acting Commissioner of Social Security,

    Defendant.

No. 16-CV-167-LTS

**REPORT AND RECOMMENDATION**

_____

Plaintiff Debra Davis seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for supplemental security income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1385. Davis argues that the administrative law judge (ALJ) erred in determining residual functional capacity (RFC) because he discredited some of the statements made by Davis and her significant other, he did not give sufficient weight to the medical opinion of the consultative examiner, and some medical evidence does not support his RFC determination. I recommend **reversing** the ALJ's decision and **remanding** for the ALJ to further develop the record with regard to the effect of Davis' carpal tunnel syndrome on her RFC.

## *I. BACKGROUND*[2]

Davis lives with her significant other, Walter Dolley, who supports her financially. AR 96, 126-29. She takes care of chores around the house, such as laundry and dusting,

---

[1] Commissioner Berryhill is substituted for her predecessor in accordance with Federal Rule of Civil Procedure 25(d).

[2] For a more thorough overview, see the Joint Statement of Facts (Doc. 11).

and prepares meals. AR 100, 112, 114, 116-18. She has lived with Dolley since 2006 and worked sporadically, some years earning no income at all. AR 126, 243.

Davis suffers from mental health problems, back pain, and carpal tunnel syndrome in her left arm and hand. AR 73, 140, 583. She regularly receives mental health treatment through the Abbe Center, where she meets with Dr. Ali Safdar for medication management and social workers Brenda Keenan and Stacey Walden for therapy. AR 541, 615. Treatment notes reflect that she met with providers for complaints related to back pain in October 2013, March 2014, and July 2014. AR 427, 515-16, 523, 526, 581. Since November 2014, she has been receiving regular treatment for back pain from Dr. Stanley Mathew. AR 622, 640, 653.

She filed an application for SSI benefits on June 25, 2013, alleging disability beginning on that date. *See* Doc. 11 at 2 n.2; AR 71, 231-34. Her application was denied initially and on reconsideration. AR 140-165. In connection with those reviews, state agency consultants evaluated her physical and mental RFC[3]: in August 2013, Dr. Jennifer Ryan evaluated her mental RFC; in October 2013, Dr. Mary Greenfield evaluated her physical RFC; and in December 2013, Dr. John May evaluated her physical RFC, and Dr. Myrna Tashner evaluated her mental RFC. *Id.* Davis also met with a one-time consultative examiner, Dr. Mark Taylor, who issued an opinion on her physical RFC in September 2013. AR 419-424.

Davis requested a hearing before an ALJ, and a video hearing was held on March 25, 2015. AR 71, 88, 183. Davis, Dolley, and a vocational expert testified. AR 88-89. On April 14, 2015, the ALJ issued a written opinion following the familiar five-step process outlined in the regulations[4] to determine whether Davis was disabled. AR 71-

---

[3] RFC is "'what the claimant can still do' despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (quoting *Bradshaw v. Heckler*, 810 F.2d 786, 790 (8th Cir. 1987)).

[4] "The five-part test is whether the claimant is (1) currently employed and (2) severely impaired; (3) whether the impairment is or approximates a listed impairment; (4) whether the claimant can perform past relevant work; and if not, (5) whether the claimant can perform any other kind of

82. The ALJ found that Davis suffers from the following severe impairments: degenerative disc disease, depression, anxiety, substance abuse disorder, carpal tunnel syndrome, and an eating disorder. AR 73. To evaluate whether Davis' impairments prevented her from working, the ALJ determined Davis' RFC:

> [Davis] has the [RFC] to perform sedentary work . . . in that the claimant can perform occasional climbing of ramps/stairs (no climbing of ladders, ropes, or scaffolds); occasional balancing, kneeling, crouching, stooping, and crawling; frequent handling, fingering, and reaching with the left (dominant) upper extremity. The claimant is also limited to simple, routine, repetitive work with simple work-related decisions. She can have occasional interaction with coworkers, supervisors, but only incidental exposure to the public.

AR 75. Sedentary work requires the ability to lift occasionally ten pounds at a time, to walk and stand for two hours in an eight-hour day, and to sit for six hours in an eight-hour day. 20 C.F.R. § 416.967(a) (2016); Social Security Ruling (SSR) 96-9p, 61 Fed. Reg. 34478, 34480 (July 2, 1996).[5]

In making his RFC determination, the ALJ considered treatment notes, function reports, Davis' and Dolley's testimony (which the ALJ did not fully credit), and the RFC opinions of the consultative examiner and state agency medical consultants, assigning some weight to Dr. Taylor's opinion and substantial weight to the state agency medical consultants' opinions. AR 75-80. Based on his assessment of Davis' RFC, the ALJ found that jobs existed that Davis could perform, such as assembler, addresser, and

---

work." *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009); *see also* 20 C.F.R. § 416.920(a)(4) (2016). The burden of persuasion always lies with the claimant to prove disability, but during the fifth step, the burden of production shifts to the Commissioner to demonstrate "that the claimant retains the RFC to do other kinds of work[] and . . . that other work exists." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004)).

[5] Occasionally is a term of art meaning "very little up to one-third" (or two hours) of an eight-hour workday. *See, e.g.*, SSR 96-9p, 61 Fed. Reg. at 34480. Frequently means one-third to two-thirds (or six hours) of an eight-hour day. *See, e.g.*, SSR 83-10, 1983–1991 Soc. Sec. Rep. 24, at 29-30 (CCH Jan. 1, 1983).

document preparer. AR 81. Thus, the ALJ determined that Davis was not disabled. AR 82.

The Appeals Council denied Davis' request for review on June 10, 2016 (AR 1-4), making the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481. The Appeals Council admitted some additional evidence into the record, including a letter dated March 8, 2016, from Dr. Mathew opining on Davis' RFC, but denied the admission of treatment records covering a time period after the issuance of the ALJ's decision and thus outside the relevant time period. AR 2, 5.

Davis filed a timely complaint in this court seeking judicial review of the Commissioner's decision (Doc. 3). *See* 20 C.F.R. § 422.210(c). The parties briefed the issues (Docs. 12-13), and the Honorable Leonard T. Strand, Chief Judge of the United States District Court for the Northern District of Iowa, referred this case to me for a Report and Recommendation.

## II. DISCUSSION

A court must affirm the ALJ's decision if it "is supported by substantial evidence in the record as a whole." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 42 U.S.C. § 405(g). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Kirby*, 500 F.3d at 707. The court "do[es] not reweigh the evidence or review the factual record de novo." *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994). If, after reviewing the evidence, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, [the court] must affirm the decision." *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

Davis challenges only the ALJ's RFC determination, arguing that the ALJ erred in evaluating her credibility, that the ALJ should have given more weight to Dolley's testimony and the consultative examiner's medical opinion, and that some medical

4

evidence does not support the resulting RFC determination. Keeping the substantial-evidence standard in mind, I address each of Davis' arguments in turn.

### A. *The Credibility Determination*

Davis argues that the ALJ improperly discredited some of her subjective complaints. When evaluating the credibility of a claimant's subjective complaints—including pain, shortness of breath, weakness, or nervousness—the ALJ must consider the factors set forth in *Polaski v. Heckler*: "(1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions." *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998); *accord Polaski*, 739 F.2d 1320, 1321-22 (8th Cir. 1984), *vacated*, 476 U.S. 1167 (1986), *reinstated*, 804 F.2d 456 (8th Cir. 1986).[6] "Other relevant factors include the claimant's relevant work history and the absence of objective medical evidence to support the complaints." *Black*, 143 F.3d at 386. The ALJ may not discount a claimant's subjective allegations based "solely on a lack of objective medical evidence." *Cline v. Sullivan*, 939 F.2d 560, 566 (8th Cir. 1991). The ALJ may reject a claimant's subjective complaints, however, based on "objective medical evidence to the contrary," *Ramirez v. Barnhart*, 292 F.3d 576, 581 (8th Cir. 2002); or "inconsistencies in the record as a whole," *Brockman v. Sullivan*, 987 F.2d 1344, 1346 (8th Cir. 1993). "The ALJ [i]s not required to discuss methodically each *Polaski* consideration, so long as he acknowledge[s] and examine[s] those considerations before discounting [the claimant's] subjective complaints." *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000).

---

[6] The court did not explicitly say that it was reinstating the original *Polaski* opinion, but the Eighth Circuit has recognized that it "effectively reinstat[ed]" *Polaski*. *Jones v. Callahan*, 122 F.3d 1148, 1151 n.3 (8th Cir. 1997).

Here, the ALJ set forth several reasons for discrediting Davis' subjective complaints. The ALJ found that Davis' allegations of constant disabling back pain, near constant shoulder pain, and an inability to walk more than half a block without resting were inconsistent with her activities of daily living. AR 78-79, 109-112. Davis testified that she grocery shops once a week, cooks and does the dishes daily, attends to her personal hygiene needs, drives, uses the computer, weeds and waters the garden, dusts, vacuums, does laundry (which requires climbing stairs), and cares for her dog (feeding and taking out to go to the bathroom). AR 112-119, 122. For hobbies, she watches movies, reads, cans food (which she may work doing all day), crochets baby blankets, and crafts. AR 119, 122. In Davis' function reports, filled out in July and November 2013, she reported that at least once a week, she spends more than an hour and a half preparing meals. AR 281, 299. A treatment note from May 2014 reflects that she shoots pool one day a week. AR 566. The ALJ could find that Davis' minimal limits in her activities of daily living were inconsistent with her allegations of disabling pain. *See Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005).

The ALJ also noted inconsistencies between the overall record and Davis' testimony of constant disabling back pain and near constant left shoulder pain. AR 78-80. The ALJ noted that on June 11, 2013, when Davis was hospitalized for abdominal pain and vomiting, she specifically denied having back pain (AR 78, 348). *See Anderson v. Shalala*, 51 F.3d 777, 780 (8th Cir. 1999) (noting that the court had previously upheld "discrediting later allegations of back pain when no complaints [were] made about such pain while receiving other treatment" (citing *Stephens v. Shalala*, 46 F.3d 37, 38 (8th Cir. 1995))). In September 2013, Davis told the consultative examiner that her mental health is "the main reason[] . . . she is applying for disability." AR 419. She also reported that she has pain in her back and left arm "throughout the day, but if she is cautious with her activities, she can keep the symptoms more controlled." AR 419. Her function report from July 2013 does not mention pain once, and her November 2013 function report also focuses on her mental disabilities, only briefly mentioning the

limitations caused by her pain. AR 279-86, 296-306. In January 2014, during a well-woman exam, she denied joint or muscular pain. AR 529. In March 2014, she complained of pain all over her body, including her back and left shoulder, but the medical provider noted that she "seems to be . . . in no acute distress" and is "[r]ather very dramatic with pain." AR 526-27. The provider noted no spinal tenderness, good range of motion of her left shoulder and wrist, and stable range of motion in her cervical spine. AR 527. In May 2014, she told her therapist that she had been exercising to relieve pain, which allowed her to walk her dog. AR 566. In July 2014, she complained of back pain, which she estimated as a 5/10 on the pain scale, and the medical provider noted that she "seem[ed] to be a comfortable-appearing lady in no acute distress." AR 523-24. Treatment notes from that time further reflect that she was able to squat and stand without difficulty. AR 524. In November 2014, she met with Dr. Mathew for treatment of her back pain, which she estimated to be a 5/10 on the pain scale and which was improved by trigger-point injections. AR 622-23. She saw Dr. Mathew again in February 2015 and again reported pain improvement after injections. AR 640. Substantial evidence supports the ALJ finding that Davis' testimony regarding the severity of her pain is inconsistent with the treatment notes and overall record.

The ALJ also noted that the objective medical evidence does not provide strong support for disabling back and left arm pain (AR 76-77), which is an appropriate consideration. *Black*, 143 F.3d at 386. In September 2013, a range of motion test for Davis' spine and left shoulder showed below-normal levels, and her left arm was tender. AR 422, 425. An October 2013 spine x-ray showed normal disc spacing, alignment, joints, and soft tissue, as well as "minimal degenerative change." AR 428. On March 4, 2014, Davis had stable range of motion in her left shoulder, left wrist, and spine. AR 527. Two days later, several tests for carpal tunnel syndrome were positive for Davis' left arm, but an electromyogram revealed no signs of neuropathy. AR 581. Tenderness was noted in Davis' left shoulder, and pain was noted in her spine and left shoulder upon range of motion. *Id.* On March 17, 2014, a spine x-ray indicated normal results. AR

515-16. Treatment notes from July 2014 revealed stable range of motion and no spinal tenderness. AR 524. In November 2014, Dr. Mathew noted tenderness in Davis' back, and several tests of Davis' left arm were positive for carpal tunnel syndrome. AR 596. He again noted that Davis' back was tender in February 2015. AR 27, 41, 640. Substantial evidence supports the ALJ's determination that the objective medical evidence does not support Davis' allegations.

Although the ALJ gave only limited weight to Davis' global assessment of functioning (GAF) scores (and ultimately found Davis more functional than her GAF scores reflected), the ALJ noted that Davis' GAF scores reflected only moderate symptoms and limitations. AR 77, 80. GAF scores are used by mental health professionals to rate an individual's level of functioning, and their meaning is set forth in the fourth edition of the Diagnostic & Statistical Manual of Mental Disorders (DSM-IV) (the fifth edition abandons the use of GAF scores). *See Stark v. Colvin*, No. 2:14-CV-02243-MEF, 2016 WL 632605, at *2 & n.1 (W.D. Ark. Feb. 17, 2016). From June 2013 to February 2015, Davis' GAF score ranged from 51 to 58, and once, was 63. AR 413, 417, 440, 476, 541-577, 621. A GAF score of 51 to 60 indicates the individual has "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or coworkers)." *Halverson v. Astrue*, 600 F.3d 922, 925 n.4 (8th Cir. 2010) (citing Am. Psychiatric Ass'n, *DSM-IV* 34). The ALJ may consider a GAF-score range reflecting only moderate symptoms when evaluating credibility. *See Lundgren v. Astrue*, No. 09-3395 RHK/LIB, 2011 WL 882084, at *13 (D. Minn. Feb. 7, 2011) (citing *Halverson,* 600 F.3d at 931) (report and recommendation), *adopted by* 2011 WL 883094 (D. Minn. Mar. 11, 2011).

Finally, the ALJ also took into account Davis' sporadic work history prior to the onset of her alleged disability, which the ALJ reasoned "raises some questions as to whether the current unemployment is truly the result of medical problems." AR 79. An

8

ALJ may properly consider this fact to discredit a claimant's subjective complaints. *See Wildman v. Astrue*, 596 F.3d 959, 968-69 (8th Cir. 2010).

In sum, good reasons support the ALJ's credibility determination, which is supported by substantial evidence.

### B. Third-Party Statement and Testimony

Davis argues that the ALJ did not give sufficient weight to the testimony and third-party report of Dolley, her significant other with whom she lives. In addition to objective medical evidence, the ALJ must "carefully consider any other information . . . about [a claimant's] symptoms," including "observations by . . . other persons." 20 C.F.R. § 416.929(c)(3); Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5882 (Jan. 18, 2017) (to be codified at 20 C.F.R. pts. 404, 416).[7] Here, the ALJ gave limited weight to Dolley's statements (including his statement that pain limits Davis' functional abilities) for the same reasons that the ALJ discredited Davis, finding Dolley's testimony inconsistent with the overall record, including treatment notes. AR 79. For the same reasons that the ALJ did not err in evaluating Davis' credibility, the ALJ did not err in assigning weight to Dolley's statements. *See Jones v. Colvin*, No. 14-CV-3049-MWB, 2016 WL 915236, at *8 (N.D. Iowa Mar. 7, 2016) (holding that discounting a third party's statements based on "their inconsistency with the

---

[7] The Social Security Administration promulgated new rules for evaluating medical evidence effective March 27, 2017. 82 Fed. Reg. at 5844. By their terms, some rules apply only to claims filed after the effective date, some rules apply only to claims filed before the effective date, and some rules apply to all claims. *See id.* at 5862; *see also, e.g., id.* at 5852. I need not address whether the new rules apply, however, because for the issues here, the new and old rules are substantively the same. *Compare Young v. Berryhill*, No. 16-20786, 2017 WL 2312859, at *2 n.3 (5th Cir. May 26, 2017) (per curiam) (applying old rules in effect "at the time of the ALJ's determination, rather than" the new rules), *with Chesser v. Berryhill*, 858 F.3d 1161, 1164 (8th Cir. 2017) (applying new rules applicable by their terms to claims filed before March 27, 2017). I therefore cite to both the old and new rules throughout this Report and Recommendation.

preponderance of the medical evidence . . . is plainly an appropriate basis for doing so" (citing *Wright v. Colvin*, 789 F.3d 847, 853-54 (8th Cir. 2015))).

The ALJ also noted that because Dolley "is not medically trained[,] . . . the accuracy of the statement/testimony is questionable." AR 79. The Northern District of Iowa has held "that lack of medical training is not a good reason to discount third-party function reports." *Jones*, 2016 WL 915236, at *8. Nevertheless, because inconsistencies with the medical evidence was the ALJ's "[m]ost important[]" reason for the weight assigned to the third-party statements (AR 79), any error is harmless. *See Jones*, 2016 WL 915236, at *8.

### C. Weight to Consultative Examiner's RFC Assessment

Davis argues that the ALJ erred by failing to adopt certain limitations set forth by the consultative examiner. When determining a claimant's RFC, the ALJ considers medical opinions from acceptable medical sources "together with the rest of the relevant evidence." 20 C.F.R. § 416.927(b); 82 Fed. Reg. at 5880. The ALJ considers the following factors to determine the weight to assign a medical opinion assessing a claimant's RFC:

> (1) whether the source has examined the claimant; (2) the length, nature, and extent of the treatment relationship and the frequency of examination; (3) the extent to which the relevant evidence, "particularly medical signs and laboratory findings," supports the opinion; (4) the extent to which the opinion is consistent with the record as a whole; (5) whether the opinion is related to the source's area of specialty; and (6) other factors "which tend to support or contradict the opinion."

*Owen v. Astrue*, 551 F.3d 792, 800 (8th Cir. 2008) (quoting 20 C.F.R. §§ 404.1527(d), 416.927(d) (2008)); *see also* 20 C.F.R. § 416.927(c); SSR 06-03P, 71 Fed. Reg. at 45595; 82 Fed. Reg. at 5880-81.

Dr. Taylor, the one-time consultative examiner, opined in September 2013 that Davis could sit, stand, and walk occasionally but would need to alternate as needed for

comfort due to back and right hip pain. AR 423. Dr. Taylor recommended that Davis lift no more than twenty pounds "between knee and chest level on a rare to occasional basis" and that she lift less than ten pounds "above shoulder level or below knee level." *Id*. He also opined that she could perform only occasional handling, gripping, and grasping with her upper extremities, noting that she would not "be able to tolerate any repetitive use of the hands or any forceful grasping and pinching." *Id*. He found that she could never wear gloves "due to bilateral hand numbness and tingling and pain" and also opined that she could never use tools or respirators. AR 423-24. Davis was not taking any prescription pain medications at the time of Dr. Taylor's examination. AR 420.

The ALJ gave only some weight to Dr. Taylor's RFC opinion, noting that his exam was brief and that he relied on Davis' "subjective reports of symptoms, history of treatment, and limitations." AR 80. The ALJ also said that he "found the claimant slightly more limited than" Dr. Taylor. *Id*. In most categories, the ALJ found Davis less limited than Dr. Taylor—for example, the ALJ found that Davis could engage in frequent handling, fingering, and reaching with her left arm and that she could sit for six hours in an eight-hour day without the need to shift positions. AR 75. Davis argues that the ALJ "failed to recognize" the more stringent limitations imposed by Dr. Taylor, since the ALJ did not explicitly reject them and because the ALJ stated he found Davis "slightly more limited" than Dr. Taylor.

The ALJ is not required "to mechanically list and reject every possible limitation." *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011). And the ALJ did find Davis more limited than Dr. Taylor in one category: by limiting Davis to sedentary work, the ALJ limited her lifting abilities to ten pounds occasionally. AR 75; 20 C.F.R. § 416.967(a). When the ALJ stated he found Davis "slightly more" limited than Dr. Taylor, he was likely referring to this restriction.

In any event, the ALJ discussed the evidence he relied on in determining RFC, some of which conflicted with Dr. Taylor's findings. For example, Dr. Taylor's tests

11

revealed a decreased range of motion of the cervical spine and left shoulder, but the ALJ noted that other "[o]bjective exams [did] not document significant range of motion difficulties." AR 78, 367, 425, 524, 527 (stable range of motion of cervical spine and left shoulder in March 2014). On the date of her exam with Dr. Taylor in September 2013, Davis had "exquisite tenderness in the right mid thoracic region," but on at least two occasions (in March and July 2014), she had no spinal tenderness. AR 422, 524, 527; *but see* AR 581, 596, 640 (cervical spine tenderness noted in March 2014, and back tenderness noted in November 2014 and February 2015).

The ALJ also noted that on at least one occasion, "the claimant denied back pain and did not report left wrist pain, inconsistent with her report at the consultative examination." AR 76, 348. The ALJ did not fully credit Davis' subjective complaints of pain, and substantial evidence supports that Dr. Taylor relied, at least in part, on such complaints. Dr. Taylor noted that his sitting, standing, and walking restrictions were based on Davis' "back and right hip pain." AR 423. Although objective testing indicated that her grip strength was a 4/5, "she could not sustain a strong grip due to pain." AR 422. Dr. Taylor thus found that "she [would] not likely be able to tolerate any repetitive use of the hands or any forceful grasping and pinching." AR 423. He also explicitly noted that he was relying in part on the "history given by the examinee" and that he "assumed that the information provided . . . is correct." AR 424. The ALJ did not err in discounting Dr. Taylor's opinion because he relied partially on Davis' discredited subjective complaints. *See Perrymore v. Colvin*, 607 F. App'x 614, 615 (8th Cir. 2015) (per curiam) (noting that a "consulting physician's opinion deserves no special weight, and is entitled to less weight when based largely on claimant's subjective complaints" (citing *Kirby*, 500 F.3d at 709)).

### D. *Some Medical Evidence*

When determining a claimant's RFC, the ALJ must consider "all of the relevant evidence, including the medical records, observations of treating physicians and others,

12

and an individual's own description of his limitations." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). The ALJ's RFC determination must be supported by at least some medical evidence that "addresses the claimant's ability to function in the workplace." *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001) (quoting *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001)). As a general rule, "an ALJ is . . . ' required to consider at least some supporting evidence from a [medical] professional.'" *Id.* (alteration in original) (quoting *Lauer*, 245 F.3d at 704)). Davis argues that because the ALJ did not adopt all the limitations found by Dr. Taylor, no medical evidence supports the ALJ's RFC determination with respect to Davis' physical limitations.

Dr. Taylor's September 2013 RFC opinion found that Davis could sit, stand, and walk for a third of an eight-hour workday and would need to shift positions as needed for comfort; that she could rarely stoop, bend, kneel, and climb stairs; that she could never crawl or climb ladders; that she could occasionally reach with her upper extremity; that she could occasionally grip and grasp but could not tolerate repetitive use of her hands; and that she could lift ten to twenty pounds. AR 423. State agency consultants Dr. Greenfield (in October 2013) and Dr. May (in December 2013) found that Davis could sit, stand, and walk for six hours in an eight-hour day without the need to shift positions; that she could frequently climb ladders, stairs, and crawl; that she had no problems stooping or kneeling; that she had no manipulative limitations; and that she could lift twenty-five to fifty pounds. AR 145-46, 159-61. The state agency consultants rejected many of the limitations found by Dr. Taylor because they were "not based on established impairments." AR 146, 160. The state agency consultants recognized Davis' spine disorder as a serious impairment, but did not consider her to have carpal tunnel syndrome. AR 143, 157. At the time of the state agency consultants' evaluations, Davis had not yet been diagnosed with carpal tunnel syndrome, and she had sought treatment for left wrist pain only once, in March 2012. AR 146, 160, 340, 582. She had not alleged carpal tunnel syndrome in her disability application, nor any problems with her hands or wrists in her July 2013 function report. AR 140, 153-54, 279-86. In her November 2013

13

function report, she stated that she was no longer able to crochet due to arm and hand pain and that pain in her left hand sometimes caused her fingers to lock up and caused her to drop things sometimes. AR 301, 305.

The ALJ stated that he gave "substantial weight" to the state agency consultants' opinions, but his RFC assessment varied greatly from their opinions: the ALJ found that Davis could stand and walk for only two hours in an eight-hour day; that she could occasionally climb stairs and never climb ladders; that she could occasionally kneel, stoop, and crawl; that she had no manipulative limitations with regard to her right arm but could engage in only frequent handling, fingering, and reaching with her left arm; and that she could lift ten pounds. AR 75, 80. The ALJ explained that this variance was "attributable to new evidence now in the record . . . that was not available to those consultants." AR 80. Davis was diagnosed with carpal tunnel syndrome in her left arm in March 2014, and she also began seeking treatment for back pain more regularly after the state agency consultants issued their opinions. AR 516, 523, 582, 640, 653.

The ALJ's determination of the effects of Davis' degenerative disc disease on her ability to function is supported by some medical evidence. Because the opinion of an examining physician is in the record (Dr. Taylor's opinion), this case is distinguishable from *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000). The ALJ considered the opinions of Dr. Taylor and the state agency consultants,[8] and the ALJ also conducted an independent review of the medical evidence. It matters not that the ALJ did not adopt all the limitations set forth by either Dr. Taylor or the state agency consultants: "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Because the ALJ adopted some of the limitations set forth by Dr. Taylor and some of the limitations set forth by the state agency consultants, some medical evidence supports his RFC determination with regard

---

[8] Contrary to Davis' argument otherwise, the regulations explicitly recognize that state agency medical consultants are "highly qualified" and "experts in Social Security disability evaluation." 20 C.F.R. § 416.927(e)(2)(i); 82 Fed. Reg. at 5877.

to Davis' degenerative disc disease.⁹ *See Kamann v. Colvin*, 721 F.3d 945, 948-51 (8th Cir. 2013) (rejecting claimant's argument that the ALJ "formulate[d] his own medical opinion" when the ALJ rejected the RFC opinion of the one-time examining psychologist and instead relied on a "thorough[] review[] [of] years of medical evidence on record" to formulate an opinion "consistent with the views of . . . the reviewing agency psychologist"); *see also Anderson*, 51 F.3d at 779-80 (holding that the ALJ's RFC determination was supported by substantial evidence when the ALJ relied on the opinions of two reviewing physicians; the opinions of treating physicians to the extent they were based on objective evaluations, but not the claimant's subjective complaints of pain; and an independent analysis of the medical evidence).

It is less clear whether some medical evidence supports the ALJ's determination of the effects of Davis' carpal tunnel syndrome on her ability to engage in handling, fingering, and reaching with her left hand and arm. The state agency consultants found Davis had no manipulative limitations because they did not evaluate the effects of Davis' carpal tunnel syndrome on her ability to function (because unlike the ALJ, they did not find Davis' carpal tunnel syndrome to be a severe impairment). This case could be compared to *Lauer*, in which the state agency medical consultant based his RFC assessment on incomplete medical records and did not recognize that the claimant suffered from somatoform disorder, which the ALJ found to be a severe impairment. 245 F.3d at 705. In *Lauer*, the Eighth Circuit held that the state agency medical consultant's opinion could not constitute some medical evidence to support the ALJ's RFC opinion when he "did not even agree with the ALJ as to the existence *vel non* of those

---

⁹ Davis argues that the state agency medical consultants' opinions do not support the ALJ's RFC determination because they did not have the benefit of all the treatment notes available to the ALJ. The ALJ explicitly recognized this fact and adopted more limitations than Drs. May and Greenfield for this precise reason. AR 80. Moreover, "[b]ecause state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing and decision." *Kohn v. Colvin*, No. C13-4003-MWB, 2013 WL 5375415, at *13 n.5 (N.D. Iowa Sept. 26, 2013) (quoting *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) (report and recommendation), *adopted by* 2013 WL 6858433 (N.D. Iowa Dec. 30, 2013).

impairments." *Id.* But here, the state agency medical consultants' failure to evaluate the effects of Davis' carpal tunnel syndrome is more excusable than in *Lauer*, as Davis did not allege carpal tunnel syndrome in her disability application and hardly any evidence supported that Davis suffered from wrist and arm problems from the time she filed her disability application to the time of the state agency consultants' decisions. *See Anderson*, 51 F.3d at 780 (noting that the claimant "did not allege disabling headaches in her application for benefits" when evaluating whether substantial evidence supported the ALJ's RFC determination).

Nevertheless, the ALJ found that Davis suffered from carpal tunnel syndrome in her left upper extremity. The only medical opinion in the record evaluating Davis' limitations caused by problems with her left arm and hand is Dr. Taylor's, and the ALJ discounted Dr. Taylor's opinion and found Davis less limited (Dr. Taylor found she could engage in only occasional handling and fingering; the ALJ found she could do so frequently). The only other medical evidence relied on by the ALJ is that Davis did not report left wrist pain in June 2013 when hospitalized for abdominal pain and vomiting; that she reported left wrist pain to Dr. Taylor in September 2013, and objective tests showed "grips were 4/5 but symmetrical and she was able to fist, oppose, and fully extend" (although Dr. Taylor noted she would not be able to do so repetitively); and that she demonstrated "clinical signs of left carpal tunnel syndrome" in March 2014 but "no cervical radiculopathy or peripheral neuropathy." AR 76-77. Some medical evidence does not support the ALJ's RFC determination regarding the effects of Davis' carpal tunnel syndrome on her ability to function. *Cf. Peterson v. Colvin*, No. C14-4110-LTS, 2016 WL 1611480, at *11 (N.D. Iowa Apr. 21, 2016) (holding that no medical evidence supported the ALJ's RFC finding that the claimant could sit or stand for thirty minutes at a time when "no medical source or other source provided an opinion that [claimant] can sit or stand for more than 15 minutes at once").

This error is not harmless because the three jobs the ALJ found Davis could perform all require frequent handling and fingering. *See* U.S. Dep't of Labor, Dictionary

of Occupational Titles §§ 713.687-018, 209.587-010, 249.587-018 (4th ed. 1991). Remand is required for further development of the record with regard to the effects of Davis' carpal tunnel syndrome in her left upper extremity on her RFC—which may include providing updated treatment notes to a state agency medical consultant to review and to reassess Davis' RFC.

### III. CONCLUSION

I recommend that the district court **reverse and remand** the decision of the Social Security Administration for further proceedings and enter judgment in favor of Davis.

Objections to this Report and Recommendation must be filed within fourteen days of service in accordance with 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation, as well as the right to appeal from the findings of fact contained therein. *See United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**DONE AND ENTERED** this 8th day of August, 2017.

_____
Kelly K.E. Mahoney
United States Magistrate Judge
Northern District of Iowa